Thomas J. Cahill, Esq.
Zoë E. Jasper, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
Suite 1130
New York, New York 10169
Tel: 212.818.9200

*Attorneys for Defendant JP Morgan Chase Bank, NA*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
:
BRUCE LYTLE,                                                     :
:
:
                              Plaintiff,                         :
                                                                 : Case No. 08 CIV 095030 DAB-JLC
              -against-                                          :
:
JPMORGAN CHASE,                                                  :
:
                              Defendant.                         :
:
:
:
---------------------------------------------------------------- x


**MEMORANDUM OF LAW IN SUPPORT OF AN**
**<u>ORDER SEALING CERTAIN RECORDS AND INFORMATION</u>**


**Satterlee Stephens Burke & Burke LLP**
230 Park Avenue
New York, NY  10169-0079
(212) 818-9200

1133481_10

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................3

DISCUSSION .................................................................................................................................5

    A.    The Controlling Legal Standard................................................................................5

    B.    Redaction of Names of Persons Whose Conduct was at Issue in Connection with Chase's Internal Investigation of Lytle's Allegations ..................8

        a.    Description and Identification of Withheld Data........................................8

        b.    Basis for Withholding the Data...................................................................9

    C.    Names of Persons Who Provided Confidential Assistance in JPMC's Internal Investigation ...............................................................................................12

        a.    Description and Identification of Withheld Data......................................12

        b.    Basis for Withholding the Data.................................................................12

    D.    Names of Persons Who Failed to Timely Comply with the Requirement that All Employees Affirm JPMC's Code of Conduct .........................................14

        a.    Description and Identification of Withheld Data......................................14

        b.    Basis for Withholding the Data.................................................................14

    E.    Identification of Internal JPMC URL Address and Internal JPMC Telephone Number....................................................................................................15

        a.    Description and Identification of Withheld Data......................................15

        b.    Basis for Withholding the Data.................................................................16

    F.    Personal Data Pertaining to Plaintiff Bruce Lytle..................................................16

CONCLUSION..............................................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Caxton International Limited v. Reserve International Liquidity Fund, Ltd.*,
  2009 WL 2365246 (S.D.N.Y., July 30, 2009) ................................................................... 7, 13

*Cohane v. National Collegiate Athletic Association*
  2008 WL 3286396 (W.D.N.Y. Aug. 7, 2008) .................................................................. 8, 14

*Gucci America Inc. v. Guess? Inc.*,
  2010 WL 1416896 (S.D.N.Y. 2010) ....................................................................................... 6

*In re Savitt/Adler Litigation*,
  1997 WL 797511 (N.D.N.Y., Dec. 23, 1997) .................................................................... 7, 8

*Kelly v. City of New York*,
  2003 WL 548400 (S.D.N.Y. February 24, 2003) ............................................................. 8, 11

*Little v. Mitsubishi Motor Manufacturing Of America, Inc.*,
  2006 WL 1554317 ................................................................................................................ 11

*Lugosch v. Pyramid Co. of Onondaga*,
  439 F.3d 110 (2d Cir. 2006) ..................................................................................... 5, 6, 7, 8

*Mitchell v. Metropolitan Life Insurance Company*,
  2004 WL 2439704 (S.D.N.Y. 2004) .................................................................................... 11

*Morales v. Zondo, Inc.*,
  204 F.R.D. 50 (S.D.N.Y.2001) ............................................................................................. 16

*Penn Group, LLC v. Slater*,
  2007 WL 2020099 (S.D.N.Y. June 13, 2007) ....................................................................... 8

*U.S. Equal Employment Opportunity Commission v. ABM Industries Inc.*,
  2019 WL 1267346 (E.D. Cal., March 31, 2010) ................................................................. 12

*United States v. Amodeo*,
  71 F.3d 1044 (2nd Cir. 1995) ("*Amodeo II*") ........................................................ 8, 9, 10, 12

**OTHER AUTHORITIES**

FRCP 5.2 ...................................................................................................................................... 17

Defendant JPMorgan Chase ("JPMC") submits this memorandum of law in response to the Court's April 28, 2011 Order (the "April 28 Order") directing that JPMC show cause as to why the redacted version of JPMC's motion for summary judgment ("JPMC's Summary Judgment Motion") should not be unsealed.

Factual assertions pertinent to this response are set forth in the affidavits of Magaly Denis-Roman, sworn to May 6, 2011 (the "May 6 Denis-Roman Affidavit") and Brenda McKee, sworn to May 6, 2011 (the "May 6 McKee Affidavit"). Specific redacted documents at issue are attached to the affidavit of Zoë Jasper, sworn to May 6, 2011 (the "May 6 Jasper Affidavit").

## PRELIMINARY STATEMENT

By this submission, JPMC seeks an Order which would permit it to protect privacy interests of certain JPMC employees and former employees by withholding identifying information regarding these individuals from the publicly filed copy of JPMC's Summary Judgment Motion. JPMC takes this step in order to safeguard these current and former JPMC employees, as well as the JPMC workplace as a whole, from the risk of harm which would result from publicly linking these individuals to certain sensitive, embarrassing and/or damaging facts and allegations at issue in this litigation.

Critically, while JPMC has redacted personal names of current and former personnel who could be harmed by public disclosure of the information at issue -- and in a handful of instances has redacted information regarding an internal JPMC URL address and telephone number -- JPMC has retained all specific factual information required for the adjudication of the Summary Judgment Motion. Thus, on the one hand JPMC's proposed redactions are limited to names (and an internal JPMC URL and telephone number) for which there is a relatively weak presumption of public access -- while on the other hand the privacy

3

interests which JPMC seeks to safeguard are comparatively strong and well recognized by the courts. Accordingly, the proposed redactions detailed herein are fully consistent with well-settled standards applicable to the sealing of records under Second Circuit law, as set forth in *Lugosch v. Pyramid Co. of Onondaga*, 439 F.3d 110 (2d Cir. 2006).

The material that JPMC seeks to redact from the public file falls into the following categories:

- The names of three current JPMC employees and one former JPMC employee whose conduct was reviewed in connection with JPMC's internal investigation of Lytle's allegations and against whom JPMC ultimately took disciplinary action.

- The names of persons who provided confidential data or otherwise assisted JPMC in connection with JPMC's internal investigation of Lytle's allegations.

- The names and email addresses of individuals who failed to timely comply with a requirement that all JPMC employees affirm the company's Code of Conduct as a condition of continued employment.

- An internal Chase URL address accessible only by Chase employees for purposes of affirming the company's Code of Conduct, and a telephone inquiry number available to Chase employees who had questions about affirming the company's Code of Conduct.

It is respectfully submitted that for the records in each category, the balance between the presumption of access, which is relatively weak in each instance, and the privacy interests at issue, which are relatively strong in each instance, weighs decisively in favor of a ruling permitting JPMC to retain the proposed redactions in the publicly filed copy of its Summary Judgment Motion.

In addition to the four categories of records listed above, JPMC also seeks to redact certain personal data of plaintiff Lytle included on his New Hire Information Form which JPMC submitted as an exhibit to the Summary Judgment Motion, in order to protect the legitimate privacy interests of Lytle as a former JPMC employee, as well as certain information,

including Lytle's social security number and his home address, which JPMC is required to redact under the federal rules.

The individual redactions pertinent to each of the four categories outlined above, together with the redactions of Lytle-related personal information, are specifically identified in the Jasper Affidavit, which also annexes a copy of the relevant documents on which the redacted material relevant to each category has been highlighted. The material identified in and annexed to the May 6 Jasper Affidavit represents the universe of material JPMC seeks to withhold from the public record. While the redactions contained in JPMC's initial public filing of its Summary Judgment Motion were somewhat broader in scope, in the interests of minimizing the burden on the Court, JPMC is now limiting its request for a sealing order request to the specific material identified in the Jasper Affidavit.

## DISCUSSION

### A.   The Controlling Legal Standard

In analyzing whether a sealing order is warranted, courts in the Second Circuit follow a three-part inquiry, as set forth by the Second Circuit in *Lugosch, supra; see also Gucci America Inc. v. Guess? Inc.*, 2010 WL 1416896 (S.D.N.Y. 2010) (applying *Lugosch* test in determining whether portions of motion papers should be submitted under seal).

The court first must determine whether the material sought to be sealed constitutes a "judicial document" -- i.e., is a document "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d at 119 (citing *United*

*States v. Amodeo,* 44 F.3d 141, 145 (2d Cir.1995) ("*Amodeo I*"). If a document is determined to be a judicial document, then there is a presumption in favor of public access. *Id.*[1]

Once a proposed redaction is determined to be, or is set forth in, a "judicial document" and thus presumptively accessible to the public, the Court then weighs the relative strength of the presumption of public access. *Lugosch*, 435 F.3d at 119. The presumption of access is relatively strong if the withheld material consists of facts germane to the adjudication of a motion or other judicial proceeding. By contrast, the presumption of access is weak when the withheld material does not play a material role in the adjudicatory process. *Id.* at 121, citing *United States v. Amodeo,* 71 F.3d 1044, 1049-1050 (2nd Cir. 1995) ("*Amodeo II*") ("[w]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason").

Courts generally accord a low presumption of access when the material sought to be withheld consists of names or other purely identifying information of persons who are not parties to the action. *In re Savitt/Adler Litigation,* 1997 WL 797511, at *4 (N.D.N.Y., Dec. 23, 1997) (names and identifying details of nonparty Assistant Attorneys General serving with plaintiffs redacted); *Caxton International Limited v. Reserve International Liquidity Fund, Ltd.*, 2009 WL 2365246, at *7 (S.D.N.Y., July 30, 2009) (names and information identifying nonparty investors redacted).

After considering the strength of the presumption of access, courts then assess the relative weight of the countervailing interests militating in favor of withholding the material at

---

[1] JPMC recognizes that documents submitted in connection with summary judgment motions are generally deemed to be judicial documents and thus, in the first instance, presumptively accessible to the public. *Lugosch*, 435 F.3d at 121.

issue from public disclosure. *Lugosch*, 435 F. 3d at 120; *Savitt/Adler,* 1997 WL at *2 (citing *Amodeo II*, 71 F.3d at 1050). Where it is determined that the strength of the presumption of public access is relatively weak and the strength of the countervailing interests militating against disclosure are strong, a sealing order is warranted. *Savitt/Adler,* 1997 WL 797511, at *3; *Kelly v. City of New York,* 2003 WL 548400, at *5 (S.D.N.Y. February 24, 2003) (citing *Savitt/Adler*).

        A central factor considered by the courts is the privacy interests of individuals or businesses that would suffer harm or embarrassment through public disclosure of sensitive, embarrassing or potentially damaging information. *Amodeo II*, 71 F.3d at 1051. As to individuals, information which is sensitive, embarrassing or potentially harmful in nature has been deemed to be "private information" worthy of protection. In determining the weight accorded the privacy interest, courts consider the extent to which the data at issue is "raw" or "unverified" and the extent to which the individual would have a "fair opportunity" to "respond to any accusations contained" in the data. *Amodeo II*, 71 F.3d at 1051. For businesses, a "privacy interest" may include, *inter alia*, business information which is unique or proprietary to a company or is generally restricted to employees of the company. *See Penn Group, LLC v. Slater*, 2007 WL 2020099, at *13 (S.D.N.Y. June 13, 2007) (ordering redaction in court filings of identities of plaintiff's clients, on grounds of potential damage to plaintiff's business and clients' legitimate privacy expectations).

        In addition to privacy interests, a further factor that courts consider is confidentiality interests protecting persons who assist investigations of potential wrongdoing. In this regard, courts are mindful that without an expectation of confidentiality, individuals may be afraid to come forward with relevant information because they fear retaliation, accusations of disloyalty and other such consequences if their assistance should become known. *See Cohane v.*

*National Collegiate Athletic Association* 2008 WL 3286396, at *3 (W.D.N.Y. Aug. 7, 2008) (ordering sealing of portions of records reflecting identity of persons who provided information in connection with confidential investigation of alleged violation of NCAA rules); *Amodeo II*, 71 F.3d at 1050.

    **B.**    **Redaction of Names of Persons Whose Conduct was at Issue in Connection with Chase's Internal Investigation of Lytle's Allegations**

        **a.**    **Description and Identification of Withheld Data**

JPMC seeks to withhold from the public record the names of individuals whose conduct was reviewed in connection with an internal investigation undertaken by JPMC's Employee Relations Advice Connections ("ERAC")[2] of Lytle's complaints regarding alleged harassment and discrimination in the workplace.[3]

In particular, JPMC reviewed allegations by Lytle that a former manager, an individual who remains a JPMC employee, made a comment at a meeting referring to a group of predominately African-American and Latino employees as "monkeys needing to learn new tricks" and also allegedly referred to an individual as a "f___ing dot head." The manager denied making these comments and stated that he used the word "monkeys" but not in this context. Following its review, JPMC determined that this individual had engaged in inappropriate conduct and sent him a written warning that further violations could result in termination of employment. *See* Rule 56.1 Statement ¶ 56.

---

[2] ERAC is a resource which JPMC employees may use for advice and assistance when they have workplace concerns or issues and which, among other things, undertakes internal investigations of employee complaints of harassment and/or discrimination. *See* Rule 56.1 Statement ¶ 26.

[3] The specific redactions JPMC seeks to make in this category are identified in the Jasper Affidavit at ¶¶ 4. Copies of the redacted pages, with the redacted material highlighted are annexed to the Jasper Affidavit as Exhibit A.

JPMC also reviewed allegations that another of Lytle's former managers, an individual who is no longer a JPMC employee, allegedly used the offensive phrase "fire that nigga" in the JPMC workplace. After conducting an investigation, JPMC concluded that the individual should be terminated for violation of JPMC policies. Two additional JPMC employees who participated in a conversation with the manager where offensive language was used were also determined to have violated JPMC policies, and both individuals received written warnings. *See* Rule 56.1 Statement ¶¶ 60-61.

JPMC is withholding from the publicly filed copy of its Summary Judgment Motion references to the names of the four JPMC employees whose conduct was reviewed in connection with this investigation. All factual information regarding JPMC's review of the conduct of these individuals, however, is retained in the publicly filed motion.

### b.     Basis for Withholding the Data

The data which JPMC seeks to withhold – i.e., the names of the four individuals whose conduct was reviewed -- carries a very low presumption of access insofar as the specific identity of these individuals is of "negligible" value to the adjudication of this motion. *Amodeo II,* 71 F.3d at 1049-1050. At the same time, specific facts concerning the internal investigation which are germane to the adjudicatory process -- including the investigation's purpose, the time and manner in which it was conducted, its conclusions and the disciplinary actions taken -- are all fully disclosed in the public record. Accordingly, the redactions JPMC seeks to make in this category are limited and discrete in nature and do not materially interfere with public access to factual information which is genuinely adjudicatory in nature.

By contrast, the privacy interests that JPMC seeks to protect by withholding the names of these individuals are strong and well recognized. Courts have long recognized that nonparty employees have a privacy interest in maintaining the confidentiality of information

9

which potentially reflects adversely on their employment history -- such as employment termination, other disciplinary actions, allegations of improper conduct, and investigations of alleged improper conduct. *See, e.g., Kelly,* 2003 WL 548400, at *5 (making personal employee information contained in investigation files subject to protective order and redaction in any court filings, where disclosing such data could "invade their privacy and impair their personal reputations"); *Little v. Mitsubishi Motor Manufacturing Of America, Inc*., 2006 WL 1554317, at *4 (C.D. Ill. June 5, 1996 (private information in nonparty employees' personnel files to be redacted from summary judgment motion papers and exhibits); *Mitchell v. Metropolitan Life Insurance Company,* 2004 WL 2439704 (S.D.N.Y. 2004) (employee personnel files containing sensitive data subject to protective order).

JPMC's own policies are consistent with these well-recognized privacy concerns. As set forth in the May 6 Denis-Roman Affidavit, JPMC as a general matter maintains all personnel data in strict confidence, taking particular care with sensitive employee information -- such as disciplinary or other adverse job actions and information which pertains to allegations and investigations of wrongful conduct in the workplace. *See Kelly,* 2003 WL 548499, at *6. This information is not accessible or disclosed to either JPMC employees or third parties, other than on a strict "need to know basis" or as required by law. *See* May 6 Denis-Roman Affidavit at ¶ 6 and Exhibit A attached thereto.

The employee conduct at issue here is particularly sensitive in nature, insofar as it involves allegations of the use of offensive racial and ethnic epithets and inappropriate conduct in the workplace and the disciplinary actions taken as a consequence, including in one instance employment termination. Public disclosure of such information could have a harmful impact on the career prospects of the affected individuals both at JPMC and elsewhere. For those


employees who still work at JPMC -- three of the four individuals at issue -- public disclosure of this information would create tensions and potential disruption in the JPMC workplace, undermining workplace efficiency and morale. May 6 Denis-Roman Affidavit ¶ 14.

Privacy concerns are particularly acute because while JPMC did conclude disciplinary action was warranted, it did not verify the allegations as asserted by Lytle. Accordingly, Lytle's allegations remain "raw" and "unverified" insofar as there is no evidence that these individuals were motivated by racial or ethnic bias or routinely used offensive language in the workplace. *Amodeo II,* 71 F.3d at 1051. Nor would any of these individuals have an opportunity to defend themselves against such charges, given that they are not parties to this action and one of the four is no longer an employee. *Id*.

In sum, the privacy interests in maintaining the anonymity of these four individuals are very strong in light of the sensitive and potentially damaging nature of the information at issue. When weighed against the relatively weak presumption of access accorded names and similar identifying data, it is respectfully requested that a sealing order is fully warranted for information falling within this category.[4] *See generally U.S. Equal Employment Opportunity Commission v. ABM Industries Inc*., 2019 WL 1267346 (E.D. Cal., March 31, 2010) (disclosure of names of alleged harassers not relevant to hostile work environment claim);

---

[4] Lytle's pleadings and the exhibits annexed thereto, which are in the public record, disclose his allegations regarding the use of offensive racial epithets in the JPMC workplace and identify his two previous supervisors by name. However the confused and disorganized narrative contained in Lytle's pleadings makes it relatively difficult to connect allegations of misconduct with the two supervisors at issue here, and his pleadings do not reference the internal investigation itself or the disciplinary actions taken against these individuals. Accordingly, the anonymity of these individuals is relatively well protected in Lytle's pleadings.

By contrast, JPMC's Summary Judgment Motion contains a full narrative description of the allegations which Lytle made against these individuals as well as the investigation and disciplinary actions subsequently undertaken by JPMC. Thus, if JPMC were to publicly file its Summary Judgment Motion in unredacted form, the privacy interests of these individuals would be directly impacted. Accordingly, a sealing order protecting the identity of these individuals is warranted.

*Caxton International Limited v. Reserve International Liquidity Fund, Ltd.*, 2009 WL 2365246 (S.D.N.Y., July 30, 2009) (permitting party to file under seal documents which disclosed names of individual investors in funds at issue in litigation given that identity of investors did not affect adjudication of case).

      C.    **Names of Persons Who Provided Confidential Assistance in JPMC's Internal Investigation**

          a.    **Description and Identification of Withheld Data**

JPMC's Summary Judgment Motion contains information pertaining to interviews which JPMC conducted with employees and independent contractors as part of its investigation of Lytle's allegations.[5]

JPMC seeks to withhold from the publicly filed copy of its Summary Judgment Motion the identities of the individuals who were interviewed as part of the investigatory process. Other than the individuals' names, all factual information pertaining to the interviews JPMC conducted -- as well as to the investigatory process as a whole -- is fully disclosed in the publicly filed copy of the motion.

          b.    **Basis for Withholding the Data**

Given that the redacted data is limited to the names of the particular individuals interviewed, the strength of the presumption of access is once again very low for this category of information. The names of the individuals who were interviewed are not germane to the adjudication of this motion. By contrast, facts which are germane to the adjudicatory process -- such as the fact that the interviews were conducted, the purpose of the interviews and the number of persons who were interviewed -- are fully disclosed in the publicly filed copy of the motion.

---

[5] The specific redactions JPMC seeks to make in this category are identified in the Jasper Affidavit at ¶ 5. Copies of the redacted pages, with the redacted material highlighted are annexed to the Jasper Affidavit as Exhibit B.

The countervailing interest weighing against the presumption of access is very strong in connection with this data. As recounted in the May 6 McKee Affidavit, all interviews conducted in connection with JPMC's internal investigations occur under a cloak of confidentiality and interviewees are assured of this fact before they are asked to provide JPMC with information. May 6 McKee Affidavit ¶ 8. This assurance of confidentiality is a critical factor in encouraging interviewees to speak candidly and openly about events under investigation, including the disclosure of sensitive or damaging information about fellow employees. May 6 McKee Affidavit ¶ 9.

Failing to protect the identities of persons providing information would subject them to awkward and potentially embarrassing situations in the workplace, as well as potential reprisals from the people who were the subject of the investigation. This, in turn, would substantially diminish the reliability of Chase's internal investigations, thereby hindering JPMC's ability to monitor and take action against potential violations of its policies governing harassment and discrimination in the workplace. May 6 McKee Affidavit ¶ 16.

In sum, as numerous courts have recognized, strong policy concerns militate in favor of maintaining the anonymity of persons assisting in the interview process. Particularly in light of the relatively low presumption of accessibility for the names which JPMC seeks to redact, it is respectfully submitted that a sealing order is warranted for this category of information as well. *See Cohane*, 2008 WL 3286396, at *4 (ordering redaction from court files of names and any sensitive personal information relating to nonparties interviewed in connection with investigation).

### D.   Names of Persons Who Failed to Timely Comply with the Requirement that All Employees Affirm JPMC's Code of Conduct

#### a.   Description and Identification of Withheld Data

Submitted with JPMC's Summary Judgment Motion are copies of a series of emails which JPMC sent to employees who had missed the deadline for affirming JPMC's Code of Conduct, a company-wide requirement. Rule 56.1 Statement ¶¶ 82-83. Also submitted with the Summary Judgment Motion is an email identifying nine individuals in Lytle's group who had not affirmed the Code of Conduct -- either because they were on leaves of absence from the company or because they were already scheduled to leave employment with JPMC. *Id.* ¶ 84.

JPMC seeks to withhold from the publicly filed copy of its Summary Judgment Motion the names of the JPMC employees who had not affirmed the Code of Conduct by a specific date (with the exception of Lytle, whose name is not redacted) and also the names of the nine individuals who did not need to affirm the Code of Conduct. [6]

#### b.   Basis for Withholding the Data

As with the categories of information described above, the strength of the presumption of access in connection with these redactions is low, given that they are limited to the names of those who had not affirmed the Code of Conduct by certain dates. The names are of negligible adjudicatory value. Information which is much more germane to the adjudicatory process -- including the fact that the emails were sent, the number of persons they were sent to and the content of the emails -- is fully disclosed.

Privacy interests militating in favor of not disclosing the identity of these individuals are strong. Public disclosure of the fact that these JPMC employees had not affirmed the Code of Conduct could subject these individuals to embarrassment and stress as well as

---

[6] The specific redactions JPMC seeks to make in this category are identified in the Jasper Affidavit at ¶ 6. Copies of the redacted pages, with the redacted material highlighted are annexed to the Jasper Affidavit as Exhibit C.

14

potentially have an adverse impact on their employment at JPMC. These concerns weigh particularly heavily here because the emails, if taken out of context, could give rise to the false impression that these individuals never affirmed the Code of Conduct -- when in fact all of them did so, with the exception of the nine individuals who did not affirm because they were out of the office on leaves of absence or were scheduled to leave the firm, and Lytle himself. Moreover, these individuals are nonparties to the action with no involvement in the factual events in controversy -- and would have no meaningful opportunity to defend themselves against allegations which may misinterpret their failure to timely affirm the Code of Conduct. *See Morales v. Zondo, Inc.*, 204 F.R.D. 50, 52 (S.D.N.Y.2001) (denying, on grounds of relevance and employee privacy, plaintiff's motion to compel defendant employer to disclose identities of employees who were excessively tardy, absent or insubordinate, or who made excessive personal telephone calls).

In sum, weighing the relatively negligible adjudicatory value of the redacted names against the relative strength of the privacy interest, it is respectfully submitted that this data should also be withheld from the public record.

E.  **Identification of Internal JPMC URL Address and Internal JPMC Telephone Number**

a.  **Description and Identification of Withheld Data**

Certain of the emails discussed in Point D *supra* include a link to an internal URL address at JPMC, accessible only by JPMC employees, which permitted employees to review and affirm the Code of Conduct electronically. These emails also identify a JPMC internal telephone number, also intended only for JPMC employees, which employees could call with questions about the Code of Conduct. May 6 Denis-Roman Affidavit ¶¶33-35.

1133481_10

JPMC has redacted from the publicly filed copy of its motion papers references to both the URL address and the telephone number.[7]

### b. Basis for Withholding the Data

Once again, the weight of the presumption of access is minimal, given that the internal URL address and JPMC telephone number are not issues in controversy and accordingly are not germane to the adjudication of this motion. On the other hand, JPMC has a legitimate privacy interest in protecting this data from public disclosure, insofar as both the URL address and the telephone number are internal to JPMC and its employees and there is no rationale for making them available to the public at large.

### F. Personal Data Pertaining to Plaintiff Bruce Lytle

Included as a submission with JPMC's Summary Judgment Motion is a New Hire Information Form, which Lytle filled out in connection with his JPMC employment. JPMC seeks to redact personal information pertaining to Lytle which appears on this form. The redacted information includes personal data which JPMC is required to redact pursuant to FRCP 5.2 (including Lytle's social security number and date of birth), as well as other personal information in which Lytle could be expected to have a legitimate privacy interest and which he may prefer to maintain as confidential, including his prior employment history and salary information.[8] To the extent that he wishes to publicly disclose that information, he may do so. *Id.* However, as it would with other employees or former employees, JPMC is endeavoring to maintain its confidentiality.

---

[7] The specific redactions JPMC seeks to make in this category are identified in the Jasper Affidavit at ¶ 8. Copies of the redacted pages, with the redacted material highlighted are annexed to the Jasper Affidavit as Exhibit D.

[8] The specific redactions JPMC seeks to make in this category are identified in the Jasper Affidavit at ¶ 8. Copies of the redacted pages, with the redacted material highlighted are annexed to the Jasper Affidavit as Exhibit E.

1133481_10

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the Court issue an Order permitting JPMC to maintain the redactions identified in the Jasper Affidavit in the publicly filed copy of the Summary Judgment Motion and to file the unredacted copy of the motion under seal.

Dated: New York, New York
　　　　May 6, 2011

　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　SATTERLEE STEPHENS BURKE & BURKE LLP


　　　　　　　　　　　　　　　　　　　By: /s/ Zoe Jasper_____
　　　　　　　　　　　　　　　　　　　　　Thomas J. Cahill
　　　　　　　　　　　　　　　　　　　　　Zoë E. Jasper
　　　　　　　　　　　　　　　　　　　Attorneys for Defendant JPMorgan Chase Bank, N.A.